**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE ITALIAN VILLAGE RESTAURANT, INC., an Illinois Corporation, and CAPITANINI REAL ESTATE INVESTMENTS INC., an Illinois Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ERIE INSURANCE COMPANY, a Pennsylvania Corporation, <br><br> Defendant. | Case No.   20 cv 3101 |

**NOTICE OF REMOVAL**

**PLEASE TAKE NOTICE** that Defendant, Erie Insurance Company ("Erie"), through undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1446, and 1453) ("CAFA"), hereby removes to this Court the lawsuit styled *The Italian Village Restaurant, Inc., an Illinois Corporation, Capitanini Real Estate Investments Inc., an Illinois Corporation v. Erie Insurance Company, a Pennsylvania Corporation*, No. 2020 L 004410, filed in the Circuit Court of Cook County, Illinois.  In support of this Notice of Removal, Erie states as follows:

**I.    INTRODUCTION.**

1.    On April 20, 2020, Plaintiffs filed this action on behalf of themselves and two putative classes.  *See* Complaint, attached as Exhibit 1 to this Notice.

2.    According to the Complaint, Plaintiffs and members of the nationwide putative classes include all persons who made business interruption claims arising from the COVID-19

1

pandemic to Defendant Erie, and had their claims denied. Plaintiffs assert that the Executive Orders issued by the Governor of Illinois triggered the business interruption coverage in their insurance policies because they allegedly were compelled to shutter their restaurants to protect the health and safety of the citizens of the State of Illinois from the threat of COVID-19. Plaintiffs filed this suit on behalf of themselves and the putative classes, seeking compensatory damages, declaratory relief, statutory penalties, and attorneys' fees.

3.      As set forth below, for two separate reasons, this case is removeable to this Court. *First*, there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs, and hence there is original jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a). *Second*, this action is removable under CAFA, as there is minimal diversity, more than 100 class members, and the amount in controversy exceeds $5,000,000.

## II.      THE PARTIES.

4.      Plaintiff The Italian Village Restaurant, Inc. ("Italian Village") alleges that it is an Illinois Corporation whose principal place of business is located in Chicago, Illinois. Compl. ¶ 22.

5.      Plaintiff Capitanini Real Estate Investments Inc. ("Capitanini") alleges that it is an Illinois corporation whose principal place of business is located in Chicago, Illinois. *Id.* ¶ 23.

6.      The Complaint alleges that Defendant Erie is a Pennsylvania corporation whose principal place of business is in Erie, Pennsylvania. *Id.* ¶ 25.

## III.     PLAINTIFFS' ALLEGATIONS.

7.      The Complaint alleges that Erie issued commercial property insurance policies to

Plaintiffs and other members of the putative classes.[1]  *Id*.  ¶ 29.  Plaintiffs contend that the Governor of Illinois issued a series of Executive Orders that caused a disruption to their businesses.  *Id*.  ¶¶ 38-43.  Plaintiffs also allege that the perceived presence of the novel coronavirus on or around Plaintiffs' and putative class members' insured premises has rendered their premises unsafe and unfit for their intended use, and that as a result the virus somehow allegedly caused physical damage or loss under Erie's commercial property insurance policy.  *Id*. ¶ 46.

8.      The Complaint alleges that as a result of the enforcement of the Executive Orders, Plaintiffs and other putative class members have suffered (and will continue to suffer) substantial business income losses and extra expenses as defined by Erie's various commercial property insurance policies.  *Id*. ¶ 49.

9.      Plaintiffs submitted claims for coverage of their business interruption and extra expense losses on March 16 and 17, 2020.  *Id*. ¶ 50.

10.     The Complaint alleges that Erie denied the claims on March 23 and March 31, respectively, allegedly without conducting a reasonable investigation.  *Id*. ¶ 51.

11.     The Complaint alleges that Erie has denied claims of other putative class members.  *Id*.

## IV.    THE COMPLAINT.

12.     Based upon these allegations, Plaintiffs, on behalf of themselves and the putative nationwide Class, assert the following claims against Erie:

- Count I seeks a declaratory judgment declaring that: Plaintiffs' losses are covered by their insurance policies, Erie waived any right to assert

---

[1] The facts set forth herein derive from Plaintiffs' Complaint.  Erie does not admit the facts alleged in the Complaint, expressly denies liability to Plaintiffs and the putative class, expressly denies that certification of any class is appropriate or permitted under the applicable rules, and reserves its rights to challenge the legal sufficiency of the Complaint.

defenses to coverage or otherwise bar or limit coverage by issuing blanket coverage denials without conducting a claim investigation as required by Illinois law, and Erie is obligated to pay Plaintiffs and other putative class members the full amount of the losses incurred or to be incurred in connection with their loss of business income related to the state's closure orders stemming from the COVID-19 pandemic. *Id.* ¶ 57.

- Count II alleges that Erie breached its coverage obligations under the policies issued to Plaintiffs and other putative class members by purportedly denying coverage for the alleged business losses incurred by Plaintiffs in connection with the state's closure orders and the COVID-19 pandemic. *Id.* ¶ 61.

- Count III asserts bad faith pursuant to Illinois Insurance Code, 215 ILCS 5/155, on the alleged basis that Erie's conduct was vexatious and unreasonable in that it purportedly denied the claims without conducting a reasonable investigation and by failure to provide a reasonable and accurate explanation for the basis of its denials. *Id.* ¶¶ 64-66.

## V.     THE REMOVAL REQUEST IS TIMELY.

13.     This Notice of Removal is timely under 28 U.S.C. § 1446(b). The Complaint was filed on April 20, 2020. On April 27, 2020 Plaintiffs served the Illinois Department of Insurance as the agent for Erie. *See* 215 ILCS 5/112(2). The Director must then forward the Complaint by certified or registered mail to Erie. *Id.* "Service of such process shall not be complete until the copy thereof has been so mailed and received by the company . . ." *Id.* Erie has not received the Complaint from the Director. *See* Declaration of Scot Morgason dated May 25, 2020 submitted herewith ("Morgason Dec."), ¶ 9. Thus, service is not complete, the deadline for removal has not expired, and Erie's Notice of Removal is timely. *See Ill. Psychiatric Hosp. Co. v. Cook*, No. 92 C 6373, 1992 WL 368053, at *1 (N.D. Ill. Dec. 1, 1992) (rejecting claim that removal was untimely and holding that "service of process was not complete until . . . the date that [defendant-insurer] received, by registered mail, a copy of the complaint from the Department of Insurance"); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (a defendant's time to remove is not triggered without "formal service"); *Shanghai Daisy,*

*LLC v. PositivEnergy, Inc.*, No. 19 C 5901, 2019 WL 6253810, at *2 (N.D. Ill. Nov. 22, 2019) (same); *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008) ("the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint" (citing *Murphy Bros.*, 526 U.S. at 350).).

## VI. THIS COURT HAS ORIGINAL JURISDICTION UNDER 28 U.S.C. § 1332(a) BECAUSE THERE IS COMPLETE DIVERSITY AND THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 EXCLUSIVE OF INTEREST AND COSTS.

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which provides that diversity jurisdiction exists in a civil matter when the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Both requirements for diversity jurisdiction are met in this case.

### A.     Complete Diversity of Citizenship Exists Between Erie And Plaintiffs.

15.     Both Plaintiffs allege that they are Illinois corporations whose principal places of business are located in Chicago, Illinois.  Compl. ¶¶ 22-23.

16.     Erie is a Pennsylvania corporation whose principal place of business is in Erie, Pennsylvania.  *Id.* ¶ 25.

17.     The only parties that the Court should consider for purposes of determining diversity jurisdiction are Plaintiffs and Erie.  "Absent class members are not parties for purposes of determining whether there is complete diversity of citizenship in cases governed by state substantive law.  Nor are they parties for purposes of calculating the amount in controversy in diversity suits not brought under the Class Action Fairness Act."  *Al Haj v. Pfizer, Inc.*, 338 F. Supp. 3d 815, 820 (N.D. Ill. 2018) (citations omitted).

18.     Complete diversity exists between Erie, a citizen of Pennsylvania, and Plaintiffs, each of which is a citizen of Illinois.

**B.** **Each Plaintiff Seeks in Excess of $75,000.**

19.     In Count III, Plaintiffs allege a violation of the Illinois Insurance Code, 215 ILCS 5/155.  The statute provides penalties of either (i) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs, or (ii) $60,000.  The Court should consider the alleged statutory penalty as part of the amount in controversy between the parties.  *See Stachewicz v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 3:09–cv–470–JPG, 2009 WL 3065065, at *3-*4 (S.D. Ill. Sept. 23, 2009) (holding that penalties alleged under § 155 can be counted to determine amount in controversy for jurisdictional purposes).

20.     While Erie contends that § 155 does not apply, Plaintiffs allege that Erie's conduct was "vexatious and unreasonable" under the statute, entitling them and the class to the above "statutory damages."  Compl. ¶ 65.[2]  The fact that Plaintiffs seek statutory remedies that could include such damages—even if Erie disputes Plaintiffs are entitled to them—is sufficient to include such potential damages in the amount in controversy calculus.  *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.,* 637 F.3d 827, 830 (7th Cir. 2011); *see also Lee v. Equifax Info. Servs., LLC*, No. CV 13–4302 SI, 2013 WL 6627755, at *4 (N.D. Cal. Dec. 16, 2013) ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy is met") (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (noting that the court would count the statutory maximum for each violation towards the amount in controversy, even if plaintiffs

---

[2] At least one Illinois appeals court has held that the statute permits the trial court to award the liquidated amount of $60,000, even if that is not the lowest amount applying the three possible tests.  *Millers Mut. Ins. Assoc. of Ill. v. House*, 675 N.E.2d 1037, 1044 (Ill. App. Ct. 1997).  While Erie believes that *Millers Mutual* was erroneously decided, the case provides authority for such a potential recovery, and hence that amount is properly considered in the amount in controversy analysis.

did not expressly seek the maximum because that is the amount in controversy). Hence, each Plaintiff—at a minimum—has asserted a claim seeking penalties of $60,000. Compl. ¶ 65.

21.     In addition, Plaintiffs in Count III of their Complaint seek statutory attorneys' fees under 215 ILCS 5/155. Compl. ¶ 68; Compl. at Wherefore clause. Under settled law, attorneys' fees available by statute, as pleaded here, count towards the amount in controversy requirement. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). Plaintiffs do not say how much in attorneys' fees they will seek, but there can be no doubt that they will seek attorneys' fees in excess of $15,001 apiece. Plaintiffs' counsel will likely claim fees in at least that amount just for conducting their investigation and drafting the Complaint.

22.     Furthermore, although Plaintiffs do not identify the specific amount of compensatory damages sought, Plaintiffs' Complaint suggests that Plaintiffs will seek "substantial" compensatory damages in the tens or hundreds of thousands of dollars based on their alleged business interruption losses. Compl. ¶¶ 49, 62 ("Plaintiffs have sustained *substantial damages* for which [Erie] is liable, in an amount to be established at trial") (emphasis added). "The Seventh Circuit has held that indemnity exposure in an underlying claim or suit should be included in calculating the amount in controversy requirement for diversity jurisdiction." *Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 777 (N.D. Ill. 2019); *see also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538-39 (7th Cir. 2006) ("[The insurer's] potential obligation to indemnify [the insured] was in controversy from the moment this suit began.").

23.     In short, it is clear that the claimed "substantial" compensatory damages, plus $60,000 in statutory penalties and statutory attorneys' fees, aggregate to an amount in controversy for each named Plaintiff that is well in excess of $75,000.

24.     Consequently, there is complete diversity of citizenship and the amount in controversy alleged by each named Plaintiff exceeds $75,000.  This Court, therefore, has original jurisdiction over this dispute and the case is thus removable to this Court.

## VII.     THE COMPLAINT SATISFIES ALL OF THE ELEMENTS FOR REMOVAL UNDER CAFA.

25.     In addition to being removable pursuant to 28 U.S.C. § 1332(a), this case is also removable under CAFA.  CAFA was enacted to "grant broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction."  *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012) (citation omitted).  Thus, removal is proper under CAFA where, as here, a purported class action is filed in which: (a) there are 100 or more purported class members, (b) there is minimal diversity of citizenship, and (c) the aggregate amount in controversy for the entire proposed class exceeds $5,000,000, exclusive of costs and interest.  28 U.S.C. § 1332(d)(2); *Appert*, 673 F.3d at 617.  This action meets all the criteria for removal under CAFA.

### A.     The Putative Class Contains One Hundred or More Members.

26.     This case purports to be a "class action" within the meaning of CAFA because it was brought under a state statute or rule, namely, 735 ILCS 5/2-801, which authorizes an action to be brought by one or more representative persons as a class action if the underlying requirements are met.  *See* 28 U.S.C. § 1332(d)(1)(A)-(B); Compl. ¶¶ 69-76.  Plaintiffs contend that "the members of the class are so numerous that separate joinder of all of the members is impracticable."  Compl. ¶ 72.

27.     Plaintiffs offer two putative class definitions.  *First*, Plaintiffs say that they "bring this claim on behalf of a class consisting of *all persons* who made claims in conjunction with COVID-19 to Defendant Insurer, Erie Insurance Company, and had their claims denied."  *Id.* ¶

70 (emphasis added) ("Putative Class I"). *Second*, Plaintiffs say that they "bring this claim on behalf of a class of other *restaurants or restauranteurs* who paid premiums to Defendant Insurer in exchange for business interruption, civil authority or extra expense coverage, submitted claims under such policies, and had their claims denied without proper investigation." *Id*. ¶ 71 (emphasis added) ("Putative Class II").

28.     Erie issued 21,888 commercial policies with business interruption coverage nationwide, 1,223 of which were issued to restaurants. Morgason Dec. ¶ 5. Thus, the size of Putative Class I as alleged by Plaintiff is potentially as large as 21,888 putative class members, and the size of Putative Class II as alleged by Plaintiffs is potentially 1,223 members.

29.     To date, 558 Erie policyholders have made claims seeking business interruption coverage related to the COVID-19 pandemic. *Id*. ¶ 6. Plaintiffs allege that each policyholder that submitted a claim is a member of Putative Class I, and Plaintiffs allege that many are also members of Putative Class II. What's more, it is reasonable to assume, given the scope of the COVID-19 pandemic, that many more of Erie's policyholders will file business interruption claims for uncovered alleged losses. In short, Plaintiffs have clearly alleged a putative class containing more than 100 putative class members.

**B.     The Putative Class Satisfies Minimal Diversity.**

30.     CAFA requires only "minimal diversity," meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

31.     Plaintiffs Italian Village and Capitanini allege that they are Illinois corporations with their respective principal places of business in Chicago, Illinois. Compl. ¶¶ 22-23.

32.     Defendant Erie is a Pennsylvania corporation whose principal place of business is in Erie, Pennsylvania.  *Id*. ¶ 25.  Thus, this case satisfies the minimal diversity requirement of CAFA because at least two members of the putative class (both Plaintiffs) are citizens of a state different than Erie.  *See* 28 U.S.C. § 1332(d)(2)(A).

**C.     The Amount In Controversy Greatly Exceeds $5 Million.**

33.     Erie disputes that Plaintiffs have stated any viable claims and also disputes that Plaintiffs and the putative class members are entitled to any relief.  Nevertheless, the allegations of the Complaint and the nature of Plaintiffs' claims make clear that the amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2) and (6).

34.     CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014).  To establish the amount in controversy sufficient to remove a class action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met."  *Id.* at 89 (citation omitted).  The jurisdictional threshold has been met.

35.     CAFA's amount in controversy requirement is satisfied where the proponent of federal jurisdiction "provide[s] a good-faith estimate that plausibly explains how the stakes exceed $5 million."  *Appert*, 673 F.3d at 617; *see also Dart Cherokee Basin Operating Co.*, 574 U.S. at 89 ("a defendant's notice of removal need include only a plausible allegation that the

amount in controversy exceeds the jurisdictional threshold."). "When removing a suit, the defendant as proponent of federal jurisdiction, is entitled to present its own estimate of the stakes . . . " *Back Doctors, Ltd.*, 637 F.3d at 830.

36. The amount in controversy is satisfied on the *possible* recovery if Plaintiffs and the class were to win on all of their claims; whether they are likely to recover anything based on the merits of the case is irrelevant to the amount in controversy analysis. *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012); *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011). "The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (citing *Blomberg*, 639 F.3d at 763); *see also Oshana*, 472 F.3d at 511.

37. Erie's good faith estimate of the stakes as alleged in the Complaint includes the four components of Plaintiffs' claims: (i) statutory penalties for alleged "bad faith;" (ii) compensatory damages for alleged breach of contract; (iii) statutory damages for attorney's fees; and (iv) declaratory relief. Each element of Plaintiffs' damages, by itself, satisfies the minimum amount in controversy threshold. In the aggregate, Plaintiffs' claims clearly demonstrate that the potential damages exceed the jurisdictional minimum.

### i. *Penalties Alleged Under 215 ILCS 5/155.*

38. In Count III, Plaintiffs allege a violation of the Illinois Insurance Code, 215 ILCS 5/155. As set forth *supra* ¶ 19, the statute permits penalties of $60,000 for each class member, which counts towards the amount in controversy requirement. *Stachewicz,* 2009 WL 3065065, at *3-*4. To meet the $5 million amount in controversy requirement under CAFA, the defendant may aggregate the statutory penalties each putative class member would be entitled to claim.

*Morey v. Louis Vuitton N. Am. Inc.*, 461 Fed. App'x 642, 643 (9th Cir. 2011) ("Because the amount in controversy *could* be as much as $1,000 [the statutory penalty] for each subsequent [statutory] violation . . . the amount in controversy exceeds $5 million") (emphasis added); *Lee*, 2013 WL 6627755, at *4 ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy is met") (citing *Korn*, 536 F. Supp. 2d at 1205 (noting that the court would count the statutory maximum for each violation towards the amount in controversy, even if plaintiffs did not expressly seek the maximum because that is the amount in controversy)); *AVA Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 528 (S.D.N.Y. 2008) (complaint's allegations that there were "thousands of class members" with no-fault insurance claims against defendant-insurer, each for up to $50,000, were sufficient to satisfy the amount in controversy requirement). The fact that Plaintiffs seek statutory remedies that could include such damages—even if Erie disputes that Plaintiffs are entitled to them—is sufficient to include such potential damages in the amount in controversy calculus. *Back Doctors*, 637 F.3d at 830.

39. To date, 558 claims have been made by Erie's policyholders seeking business interruption coverage related to the COVID-19 pandemic. *See* Morgason Dec. ¶ 6. Plaintiffs allege that each policyholder that submitted a claim is a member of Putative Class I, and that many are also members of Putative Class II. It is reasonable to assume, given the scope of the COVID-19 pandemic, that many more of Erie's policyholders will file business interruption claims for uncovered losses that, after a reasonable investigation of each claim, are ultimately denied.

40. Even if the size of the class does not increase, however, the alleged statutory damages available to those 558 potential members of Putative Class I would equal $33,480,000

(558 X $60,000). Thus, the amount in controversy—based only on current claims—is nearly eight times more than $5,000,000, and that is without consideration of alleged compensatory damages or attorneys' fees. Moreover, as already established, Putative Class II will exceed 100 putative class members. But even assuming only 100 putative class members, the potential alleged statutory damages of Putative Class II will exceed $5,000,000 (100 X $60,000 = $6,000,000).

### ii.    *Compensatory Damages For Breach Of Contract.*

41.    Plaintiffs provide no calculation of their own alleged damages or those of putative class members, but Erie reasonably anticipates that class members will, on average, each seek tens of thousands of dollars in damages.

42.    Significantly, according to Erie's records, during 2018 and 2019 Erie paid over 1,450 business interruption claims at an average of more than $11,900 per claim. Morgason Dec. ¶ 7. This figure is a conservative estimate of the damages each alleged member of the putative classes here may seek, as Plaintiffs claim that their businesses and those of members of the putative classes were interrupted for lengthy periods of time. *Id.*

43.    But, just taking the average of approximately $11,900 paid for each business interruption claim over the last two years, and multiplying that by the 558 policyholders whose have already filed claims, yields potential claims payouts in this case of $6,640,200 to those 558 policyholders. *Id.* ¶ 8.

44.    The above is a conservative estimate of the number of putative class members and the amount in dispute in this case. The minimal $6,640,200 at issue as articulated above does not take into account that (a) the number of putative class members will likely increase by at least several fold as more policyholders file claims for uncovered alleged losses; (b) the likely amount

sought by each policyholder will be substantially in excess of $11,900 and will likely be multiples of that amount given the length of time encompassed by Executive Orders; and (c) the Plaintiffs in this case seek statutory penalties and attorneys' fees for themselves and members of the putative classes. In short, there is no doubt that this class action involves more than 100 class members and damages in excess of $5,000,000.

### iii. Attorneys' Fees.

45. In addition, Plaintiffs seek statutory attorneys' fees in Count III of their Complaint and in the "Wherefore" clause. Compl. ¶ 68; Compl. at Wherefore clause. Attorneys' fees available by statute, as pleaded here, count towards the amount-in-controversy requirement. *Oshana*, 472 F.3d at 512. In this case, two Plaintiffs representing a nationwide class "so numerous that separate joinder of all of the members is impracticable" are suing an insurance company to recover business interruption and extra expense losses arising out of the worldwide COVID-19 pandemic. Plaintiffs allege that the purported closure of their restaurants threatens their very survival. The restaurant industry, in general, has claimed that it faces an existential risk because of COVID-19. In this high-stakes legal gambit, a request for attorneys' fees alone in excess of $5,000,000 is not unlikely. In any event, because Plaintiffs seek potentially significant actual damages, massive statutory penalties, and statutory attorneys' fees, it is "obvious from a common-sense reading of the complaint" that no legitimate dispute exists that the amount at stake exceeds $5,000,000. *See Oberle v. Solid Platforms, Inc.*, No. 08–1090, 2008 WL 2839021, at *3 (C.D. Ill. July 22, 2008).

### iv. Declaratory Relief.

46. In addition to statutory penalties, compensatory damages and attorneys' fees, Plaintiffs seek a declaratory judgment declaring (erroneously) that Erie's policies provide

14

coverage where a civil authority orders businesses to close or change their operations as part of an effort to slow the transmission of a virus. Compl. ¶¶ 57; 57(a)-(c). Such a declaration would fundamentally enlarge the scope of Erie's policies from providing coverage where physical damage causes business interruption, to policies that provide coverage in the absence of any physical damage but where a civil authority enters an order to enforce social distancing or to achieve some other supposed societal benefit. Plaintiffs seek this relief for all "other *potential* class members." *Id.* (emphasis added). Every policyholder—more than 20,000 of them—is potentially a member of the putative classes insofar as Plaintiffs and the putative classes seek declaratory relief.

47. In calculating for amount in controversy purposes the value of this declaratory relief, the Court should consider the potential impact such relief would have on Erie. *See e.g.*, *Home Depot v. Rickher*, No. 06-8006, 2006 U.S. App. LEXIS 32391, at *2-*5 (7th Cir. 2006) ("[i]f [plaintiff] were to succeed on his claims, it follows that [defendant] would be enjoined from selling the damage waivers; [defendant] has shown by a reasonable probability that this would cost it $ 1.2 million per year"); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) ("[o]nly if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997) (amount in controversy requirement can be met in several ways, including showing that equitable relief "would force the defendant to forgo a benefit to him that is worth more than the threshold amount . . ., as where the suit asks that the defendant be enjoined from completing a lucrative transaction" and showing that the "costs of compliance" would exceed that threshold); *see also Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 847 (S.D.

Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of *all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants*.") (quoting S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 2 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3, 41, 2005 WL 627977) (emphasis added).

48.     Erie issued 21,888 commercial policies throughout the country with business interruption coverage.  Should Plaintiffs succeed in obtaining the declaratory relief they seek, each policyholder could potentially receive business interruption coverage not provided for by the terms and conditions of the policies—not only with respect to the COVID-19 pandemic, but with respect to potential future pandemics.  This new benefit to all policyholders would logically flow from the granting of the declaratory relief Plaintiffs seek.  The damage to Erie's business resulting from compliance with such a judgment would far exceed $5 million.

## VIII.    ERIE HAS COMPLIED WITH ALL REMOVAL PROCEDURES.

49.     In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all counsel of record, along with a copy of the Notice to the Clerk of the Court for the Circuit Court of Cook County, Illinois.

50.     In accordance with 28 U.S.C. § 1446(a), a true copy of all state court process, pleadings and orders served on Erie are attached to this Notice.[3]

## IX.    NON-WAIVER OF DEFENSES.

51.     By filing this Notice of Removal, Erie does not waive any defenses available to it.

---

[3] To date, Erie has not been served.  However, Erie has attached a copy of the Complaint to this Notice of Removal.

52. By filing this Notice of Removal, Erie does not admit any of the allegations in Plaintiffs' Complaint. Erie expressly reserves the right to contest those allegations at the appropriate time.

WHEREFORE, Defendant, Erie Insurance Company, removes the above-captioned action from the Circuit Court of Cook County, and requests that further proceedings be conducted in this Court as provided by law.

Dated: May 26, 2020

Respectfully submitted,

HINHOUSE WILLIAMS WALSH LLP

By: /s/ Bruce M. Lichtcsien
Bruce M. Lichtcsien
(312) 784-5431
blichtcsien@hww-law.com
Jonathan R. Puskar
 (312) 784-5417
jpuskar@hww-law.com
180 N. Stetson, Suite 3400
Chicago, IL 60601

Adam J. Kaiser (pro hac vice pending)
ALSTON & BIRD, LLP
90 Park Ave.
New York, New York 10016
(212) 210-9000
adam.kaiser@alston.com

Attorneys for Defendant Erie Insurance Company